UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| TRI-STATE TELECOMMUNICATIONS, INC. | : | |
| Debtor | : | Bankruptcy No. 11-13005 |
| _____ | | |
| TRI-STATE TELECOMMUNICATIONS, INC. by and through Bonnie Finkel, Chapter 7 Trustee | : | |
| | : | |
| Plaintiff | : | |
| v. | | |
| | : | |
| FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF BUCKS COUNTY | | Adv. No. 12-0377 |
| | : | |
| Defendant | : | |
| _____ | | |

.................................................

MEMORANDUM

.................................................

Before me is the motion of defendant First Federal Savings and Loan Association of Bucks County to dismiss the first amended complaint filed by the chapter 7 trustee, Bonnie Finkel.  Dismissal is sought under Federal Rule of Bankruptcy Procedure 7012 for the trustee's alleged failure to state a claim.  The trustee opposes the relief sought.

After consideration of both parties' supporting memoranda and oral argument, the defendant's motion to dismiss is ripe for determination.

I.

The trustee's first amended complaint alleges the following facts.

The chapter 7 debtor, Tri-State Telecommunications, Inc., is a Pennsylvania corporation located in Bristol, Pennsylvania.  First Amended Complaint, ¶ 1.  Prior to March 30, 2004, Patricia A. Long owned 49% of the debtor's corporate shares.  First Amended Complaint, ¶ 7.  On March 30, 2004, Mrs. Long and her husband, Edward Long, Sr., obtained a $2.5 million "credit facility" from First Federal, "for the purpose of payment of existing liens and the payment of costs incidental to the Loan."  First Amended Complaint, ¶ 9; exhibit A, ¶ 2.01.  The loan proceeds were to be used by the Longs "for business purposes," which purposes did not include the purchase of "margin stock."  Id., ¶ 4.01.  The trustee avers that the funds borrowed from First Federal were used by Mrs. Long to purchase the 51% of Tri-State's stock that she did not already own.  First Amended Complaint, ¶¶ 8-9.

The Longs' loan agreement provided that Tri-State would act as surety for their loan, First Amended Complaint, ¶ 10; exhibit A, ¶¶ 1.01; 3.02, and required that Mr. Long be the president of Tri-State.  Ex. A, ¶ 6.04.  The agreement also stated that its provisions would be governed by Pennsylvania state law.  Id., ¶ 9.04.

The trustee further avers that, consistent with the terms of the loan agreement, Tri-State entered into an "unconditional guarantee and surety agreement" with First Federal dated March 30, 2004.  First Amended Complaint, ¶11; ex. B.  The consideration for this guarantee and surety agreement included the loan agreement made with the Longs.  Ex. B, ¶ 1(a).  The guarantee and surety agreement was signed by Mr.

Long as president of Tri-State, and Patricia Sternor as corporate secretary.[1]  Ex. B, at 8.

Under its terms, Tri-State agreed that its "guarantee and surety . . . is absolute, and

unconditional, primary, direct and immediate. . . ."  Ex. B, ¶ 2(c); First Amended

Complaint, ¶¶ 12-13.  The provisions of this agreement are governed by Pennsylvania

law.  Ex. B, ¶ 10(c).

The trustee further alleges that Tri-State entered into this guarantee/surety

agreement with First Federal solely to permit Mrs. Long to purchase its corporate stock

that she did not already own.  First Amended Complaint, ¶ 14.  The trustee also asserts

that First Federal's collateral for the loan and surety agreement included all of Tri-State's

stock as well as all of Tri-State's assets.  First Amended Complaint, ¶¶ 15-16.  Although

the guarantee/surety agreement refers to "collateral," and defines that term, ex. B, ¶¶ 2(a),

2(k), 13(a), no security documents were attached to the complaint.[2]

After the loan and guarantee/surety agreements were signed on March 30,

2004, Tri-State made payments to First Federal as loan surety until April 13, 2011, the

date upon which Tri-State filed its voluntary chapter 7 petition.  First Amended

Complaint, ¶ 21.  These payments to First Federal by Tri-State totaled more than $1

million.  First Amended Complaint, ¶ 23.

The trustee contends that Tri-State's agreement with First Federal was a "de

facto" stock redemption.  First Amended Complaint, ¶¶ 17-20, 24.  Furthermore, although

---

[1]The pleadings do not reveal whether Patricia Long and Patricia Sternor are the same person.

[2]The trustee submitted a supplemental memorandum after oral argument in which she disavows her assertion that First Federal held a security interest in Tri-State's assets.  That issue will be discussed later.

3

Tri-State represented in its guarantee/surety agreement that it was "solvent, able to pay its debts as they mature, will have capital sufficient to carry on its business and all businesses in which it is about to engage, and will have assets which will have a present saleable value greater than the amount of all of the debt of the Surety," ex. B, ¶ 9(d), the trustee avers that the value of certain assets listed on Tri-State's balance sheet were inaccurate, First Amended Complaint, ¶ 25, so that Tri-State was insolvent "when the instant transaction of February [sic] 2004 was consummated." First Amended Complaint, ¶ 26 (emphasis omitted). Finally, the trustee alleges that Tri-State's payments to First Federal "severely impaired" [its] ability to pay its other debts." First Amended Complaint, ¶ 29.

Based upon these allegations, the trustee raises five causes of action against defendant First Federal. Count I contends that First Federal received an "unlawful distribution" within the scope of Pennsylvania law: 15 Pa. C.S.A § 1551, et seq. In Count II, the trustee maintains that First Federal received fraudulent conveyances within the scope of the Bankruptcy Code: 11 U.S.C. § 548. Similarly, in her Count III, the trustee asserts that payments received by First Federal from Tri-State were fraudulent conveyances under state law: 12 Pa. C.S.A. § 5101, et seq.[3] In Count IV, the trustee alleges that all payments received by First Federal within 90 days of April 13, 2011 were preferential within the meaning of 11 U.S.C. § 547. Finally, in Count V (pled by the trustee as an alternative to her four previous counts) the trustee contends she is entitled to recover more than $1 million from First Federal by virtue of 11 U.S.C. § 550(a).

---

[3]At oral argument, the trustee acknowledged that she is asserting that constructive fraudulent conveyances occurred, as she knows of no facts that would allow her to assert a claim that there had been an intentional fraudulent conveyance.

4

II.


A.


As mentioned earlier, First Federal seeks to dismiss all five counts of the

trustee's first amended complaint for her failure to state any cause of action.

Federal Rule of Bankruptcy Procedure 7012 incorporates, inter alia, Federal

Rule of Civil Procedure 12(b)(6), which permits dismissal of a complaint for failure to

state a claim.  Beginning with Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and

later with Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court reinterpreted the

standard for applying Rule 12(b)(6) that had existed under Conley v. Gibson, 355 U.S. 41

(1957).  The Third Circuit Court of Appeals explained the proper application of Rule

12(b)(6) under the Supreme Court's revised standard:

> A complaint may be dismissed for "failure to state a claim
> upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).
> Federal Rule of Civil Procedure 8(a)(2) requires "only 'a
> short and plain statement of the claim showing that the
> pleader is entitled to relief' in order to 'give the defendant fair
> notice of what the . . . claim is and the grounds upon which it
> rests.'"  Twombly, 550 U.S. at 555 (quoting Conley v.
> Gibson, 355 U.S. 41, 47. . .  (1957)).  "[A] plaintiff's
> obligation to provide the grounds of his entitle[ment] to relief
> requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do."
> Id. at 555. . . .  When reviewing a motion to dismiss, we
> construe the complaint "in the light most favorable to the
> plaintiff."  In re Ins. Brokerage Antitrust Litig., 618 F.3d 300,
> 314 (3d Cir. 2010). . . .
>
> The Supreme Court in Twombly set forth the "plausibility"
> standard for overcoming a motion to dismiss and refined this
> approach in Iqbal.  The plausibility standard requires the
> complaint to allege "enough facts to state a claim to relief that

5

> is plausible on its face." Twombly, 550 U.S. at 570. A
> complaint satisfies the plausibility standard when the factual
> pleadings "allow [ ] the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged." Iqbal,
> 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). This
> standard requires showing "more than a sheer possibility that
> a defendant has acted unlawfully." Id. A complaint which
> pleads facts "'merely consistent with' a defendant's liability,
> [] 'stops short of the line between possibility and plausibility
> of "entitlement of relief."' Id. (citing Twombly, 550 U.S. at
> 557).

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011).

Although for purposes of Rule 12(b)(6) a court must accept the plaintiff's

factual allegations as true, see, e.g., Ashcroft v. Iqbal, 556 U.S. at 678, the application of

the new plausibility standard requires a three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff
> must plead to state a claim." Second, the court should
> identify allegations that, "because they are no more than
> conclusions, are not entitled to the assumption of truth."
> Finally, "where there are well-pleaded factual allegations, a
> court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129

S. Ct. at 1947); see, e.g., Bistrian v. Levi, 2012 WL 4335958 (3d Cir. Sept. 24, 2012);

Burtch v. Milberg Factors, Inc., 662 F.3d at 221.

Accordingly, I shall accept the trustee's well-pleaded factual allegations as

true, as well as all reasonable inferences that may be drawn from those allegations. If,

nonetheless, this complaint fails to meet the pleading standard set forth in Iqbal, dismissal

is warranted, see, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); In re Joubert,

411 F.3d 452 (3d Cir. 2005); Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988),

unless leave to amend is appropriate. See, e.g., Jones v. Domalakes, 161 Fed. Appx. 216,

217 (3d Cir. 2006) (non-precedential); <u>Chemtech Intern., Inc. v. Chemical Injection Technologies, Inc.</u>, 170 Fed. Appx. 805, 811 (3d Cir. 2006) ("[I]n this circuit, '[w]hen a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.'") (quoting <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002)); <u>Griffin-El v. Beard</u>, 2009 WL 1229599, at *6 (E.D. Pa. Apr. 30, 2009).  Where, however, the opportunity to replead would not correct the defects in a party's claim, a court need not grant leave to amend. <u>See</u> <u>e.g.</u>, <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004) ("We have held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."); <u>Peterson v. Philadelphia Stock Exchange</u>, 717 F. Supp. 332, 337 (E.D. Pa. 1989); <u>see also</u> <u>Massarsky v. General Motors Corp.</u>, 706 F.2d 111, 125 (3d Cir. 1983); <u>Sarfaty v. Nowak</u>, 369 F.2d 256, 259 (7th Cir. 1966) ("Rule 15(a) does not require a court to do a futile thing.").

### B.

Before addressing this motion to dismiss under Rule 7012, certain preliminary matters should be clarified.

First, while the trustee contends that all five of her causes of action are core proceedings for which this court is empowered to render a final judgment, First Federal asserts that Counts I and III, based upon Pennsylvania law, are non-core, and that Count

II, although based upon section 548 of the Bankruptcy Code, also requires that a bankruptcy judge only issue a recommendation absent consent of all parties. (Apparently, the defendant agrees that Counts IV and V, based upon sections 547 and 550, are core matters.)

The Third Circuit Court of Appeals has instructed that a proceeding is classified as "core" under 28 U.S.C. § 157 "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." In re Marcus Hook Development Park, Inc., 943 F.2d 261, 267 (3d Cir. 1991) (quoting Beard v. Braunstein, 914 F.2d 434, 444 (3d Cir. 1990), which, in turn, quoted Matter of Wood, 825 F.2d 90, 97 (5th Cir. 1987)); accord In re Winstar Communications, Inc., 554 F.3d 382, 405 (3d Cir. 2009).[4]  Accordingly, "[i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding . . . ." In re Guild and Gallery Plus, Inc., 72 F.3d 1171, 1178 (3d Cir. 1996).  In general, when an adversary proceeding raises multiple claims, the various claims must be analyzed for bankruptcy jurisdictional purposes on a claim-by-claim basis.  Halper v. Halper, 164 F.3d 830, 839 (3d Cir. 1999); see In re Mullarkey, 536 F.3d 215, 223 (3d Cir. 2008).

When a claim asserted in an adversary proceeding is classified as non-core, a bankruptcy court has subject matter jurisdiction to hear the claim, see 28 U.S.C. § 157(c)(1); In re Winstar Communications, Inc., 554 F.3d at 405; Matter of Walker, 51

_____

[4]The Supreme Court in Stern v. Marshall, 131 S. Ct. 2594 (2011), did not alter this definition.  Rather, it held that Congress improperly classified as a core matter a purely state law counterclaim asserted by a debtor.  This counterclaim did not invoke a substantive right created by the Bankruptcy Code; nor could this counterclaim only arise in the context of a bankruptcy case.

F.3d 562, 568-69 (5th Cir. 1995), but can only issue a recommendation to the district

court unless all parties consent to the entry of a final judgment.  See 28 U.S.C. §

157(c)(1), (c)(2); In re Winstar Communications, Inc., 554 F.3d at 405.

At oral argument, both parties expressly consented to my entry of a final

judgment on all five counts of the trustee's amended complaint.  In light of their consent,

I need not determine which of the parties' competing jurisdictional positions are correct.

See, e.g., In re River Entertainment Co., 467 B.R. 808, 818 (Bankr. W.D. Pa. 2012).


C.


Second, First Federal raises among its bases for dismissal the affirmative

defense that the statute of limitations bars certain claims asserted by the trustee.  In

general, affirmative defenses cannot be used to support dismissal under Rule 12(b)(6).

Rather, defendants plead such defenses in their answers to the complaint and can only

assert such an affirmative defense at trial or, if no material facts are in dispute, in

connection with summary judgment.  See, e.g., Robinson v. Johnson, 313 F.3d 128, 135

(3d Cir. 2002), cert. denied, 540 U.S. 826 (2003); Stirchak v. Shiley, 1996 WL 166958, at

*1 (N.D. Ill. April 5, 1996); Resolution Trust Corp. v. Fiala, 870 F. Supp. 962, 971 (E.D.

Mo. 1994).

Modern federal pleading practice in this circuit, however, accepts that a

defendant's limitations defense can be addressed in certain circumstances by a Rule

12(b)(6) motion to dismiss.  See In re Tower Air, Inc., 416 F.3d 229, 238 (3d Cir. 2005);

Flight Systems, Inc. v. Electronic Data Systems Corp., 112 F.3d 124, 127 (3d Cir. 1997)

("On a Rule 12(b)(6) motion, an affirmative defense, such as the statute of frauds defense raised by EDS, is appropriately considered only if it presents an insuperable barrier to recovery by the plaintiff.").

As explained by the Third Circuit Court of Appeals:

> Technically, the Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer. Rule 12(b) states that "[e]very defense . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion. . . ." The defenses listed in Rule 12(b) do not include limitations defenses. Thus, a limitations defense must be raised in the answer, since Rule 12(b) does not permit it to be raised by motion. However, the law of this Circuit (the so-called "Third Circuit Rule") permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).

Robinson v. Johnson, 313 F.3d at 135 (footnote omitted); see, e.g., In re Coastal Group, Inc., 13 F.3d 81, 83 (3d Cir. 1994) (limitations issue raised and considered by a motion to dismiss under Fed. R. Bankr. P. 7012(b)); 2 Moore's Federal Practice, ¶ 12.34[4][b] (3d ed. 2012) ("Dismissal under Rule 12(b)(6) may also be appropriate when a successful affirmative defense or other bar to relief appears on the face of the complaint, such as . . . the statute of limitations.") (footnote omitted).

However, while a limitations defense may be asserted in the context of a motion to dismiss, the validity of that defense must be clear from the complaint itself. Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 588, 591 (9th Cir.), cert. denied, 498 U.S. 824 (1990):

10

> [W]here the issue of limitations requires determination of
> when a claim begins to accrue, the complaint should be
> dismissed only if the evidence is so clear that there is no
> genuine factual issue and the determination can be made as a
> matter of law.

See Askanase v. Fatjo,828 F. Supp. 465, 469 (S.D. Tex. 1993); see also Continental

Collieries v. Shober, 130 F.2d 631, 635-36 (3d Cir. 1942) (statute of frauds defense was

not established on the face of the complaint).

In deciding whether an affirmative defense is clear from the complaint

itself, a court may consider documents incorporated by the complaint.  In this adversary

proceeding the two documents relied upon by the trustee in her complaint, whose

authenticity is unchallenged, may be considered for purposes of a motion to dismiss

without converting the motion to one under summary judgment.  See Pryor v. NCAA, 288

F.3d 548, 560 (3d Cir. 2002):

> "[D]ocuments whose contents are alleged in the complaint
> and whose authenticity no party questions, but which are not
> physically attached to the pleading, may be considered. . . .
> Documents that the defendant attaches to the motion to
> dismiss are considered part of the pleadings if they are
> referred to in the plaintiff's complaint and are central to the
> claim; as such, they may be considered by the court."

(quoting 62 Fed. Proc., L. Ed. § 62:508); see also Pension Benefit Guaranty Corp. v.

White Consolidated Industries, Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993), cert. denied,

510 U.S. 1042 (1994):

> We previously left open whether a court may properly
> consider a concededly authentic document upon which the
> complaint is based when the defendant attaches such a
> document to its motion to dismiss.  We now hold that a court
> may consider an undisputedly authentic document that a
> defendant attaches as an exhibit to a motion to dismiss if the
> plaintiff's claims are based on the document.  Otherwise, a
> plaintiff with a legally deficient claim could survive a motion

11

> to dismiss simply by failing to attach a dispositive document on which it relied.  Our decision will not undermine the rationale underlying Rule 12(b)(6)'s requirement that a motion to dismiss be converted to a summary judgment motion if a court considers matters outside the pleadings.  The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond.  When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.

(citations omitted); accord In re Rockefeller Center Properties, Inc. Securitites Litigation, 184 F.3d 280, 287 (3d Cir. 1999); In re Beck, 272 B.R. 112, 114 n.1 (Bankr. E.D. Pa. 2002).

To the extent the trustee's claims are based upon Pennsylvania state law, this court would apply the state limitations periods.  See, e.g., In re Mushroom Transp. Co., 382 F.3d 325, 336 (2004); In re Fruehauf Trailer Corp., 250 B.R. 168, 184 (D. Del. 2000); In re MacGregor Sporting Goods, Inc., 199 B.R. 502, 510 (Bankr. D.N.J. 1995); see generally Zlotnick v. PaineWebber, Inc., 1992 WL 111383, at *1 (E.D. Pa. 1992).  To the extent that the claims are derived from the Bankruptcy Code, the limitations periods found therein will be applied.  See 11 U.S.C. § 546.

D.

Third, although 11 U.S.C. § 108(a) can extend the limitations period in which a trustee can assert a claim on behalf of the bankruptcy estate for up to two years from the date a bankruptcy petition is filed, this extension does not apply when the limitations period has expired prior to the commencement of the bankruptcy case.  See In

re National Forge Co., 344 B.R. 340, 375 (W.D. Pa. 2006); In re Fruehauf Trailer Corp.,

250 B.R. at 185; see also In re Klingshirn, 209 B.R. 698, 702 (B.A.P. 6th Cir. 1997) ("By

its language, § 108(c) extends a statute of limitations that would expire while the

automatic stay is in effect. . . .  Otherwise, § 108(c)(1)[5] preserves the statute of limitations

established under nonbankruptcy law.").  In other words, if a claim is barred prepetition

by the relevant statute of limitations, a later bankruptcy filing does not resurrect that

claim.  See, e.g., Main, Inc. v. Blatstein, 2000 WL 1796417, at *3 (E.D. Pa. Nov. 28,

2000); In re Keeler, 440 B.R. 354, 360 n.2 (Bankr. E.D. Pa. 2009).


E.


        Finally, the chapter 7 trustee acknowledged at oral argument that she brings

these five claims in her capacity as the sole representative of the bankruptcy estate of Tri-

State, pursuant to 11 U.S.C. § 323.  See generally Smith v. Arthur Andersen LLP,

421 F.3d 989, 1002 (9th Cir. 2005); Donaldson v. Bernstein, 104 F.3d 547, 554 (3d Cir.

1997); Matter of Richman, 104 F.3d 654, 657 (4th Cir. 1997); Shearson Lehman Hutton,

Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991)  ("Under the Bankruptcy Code the

trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit

that the bankrupt corporation could have instituted had it not petitioned for bankruptcy.").

        While a chapter 7 trustee has standing to assert prepetition claims that

belong to the bankruptcy estate of the debtor, the trustee is subject to all legal restrictions,

---

        [5]Section 108(a) addresses prepetition claims belonging to the debtor.  Section
108(c) concerns prepetition claims against the debtor.

including affirmative defenses, which could be raised were the debtor still able to bring

the action itself.  See, e.g., Bank of Marin v. England, 385 U.S. 99, 101 (1966); Reed v.

City of Arlington, 650 F.3d 571, 575 (5th Cir. 2011); see generally Integrated Solutions,

Inc. v. Service Support Specialties, Inc., 124 F.3d 487, 492 (3d Cir. 1997) ("'Once a

property interest has passed to the estate, it is subject to the same limitations imposed

upon the debtor by applicable nonbankruptcy law.'") (quoting In re American Freight

Sys., Inc., 179 B.R. 952, 960 (Bankr. D. Kan. 1995)).

   Therefore, if Tri-State's state law claims against First Federal would have

been barred by the statute of limitations just prior to its filing its bankruptcy petition on

April 13, 2011, then the trustee's claims are equally barred.  See Rajala v. Donnelly

Meiners Jordan Kline, P.C., 193 F.3d 925 (8th Cir. 1999); Laddin v. Edwards, 2005 WL

6076939, at *6 (N.D. Ga., February 16, 2005) ("[I]f the debtor has a claim that is barred

at the time of the commencement of the case by the statute of limitations, then the trustee

would not be able to pursue that claim, because he too would be barred. He could take no

greater rights than the debtor himself had."), aff'd sub nom., Official Committee of

Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145 (11th Cir. ,2006); Purves v.

ICM Artists, Ltd., 119 B.R. 407, 411-12 (S.D.N.Y. 1990); In re Kindred, 2009 WL

1788401, at *4-*5 (Bankr. M.D. Fla. June 5, 2009).


III.


A.


14

As noted above, the trustee asserts in Count I of her amended complaint that the March 30, 2004 transaction constituted a "de facto" redemption of its stock by Tri-State, which redemption, made while it was insolvent and that substantially impaired Tri-State's ability to repay its other creditors, constituted an "unlawful distribution" within the meaning of 15 Pa. C.S.A. § 1551.  First Amended Complaint, ¶¶ 31-39.

Under Pennsylvania's Business Corporation Law,[6] business corporations (such as Tri-State) are permitted to make distributions to their shareholders if authorized by their directors and not prohibited by their bylaws.  See 15 Pa. C.S.A. § 1551(a). Distributions are prohibited, however, when the distribution would render the corporation insolvent under either the "equity test" (unable to pay debts as they become due) or the "balance sheet test" (liabilities exceed assets).  See 15 Pa. C.S.A. § 1551(b).

The term "distribution" is defined in 15 Pa. C.S.A. § 1103, as follows:

> A direct or indirect transfer of money or other property (except its own shares or options, rights or warrants to acquire its own shares) or incurrence of indebtedness by a corporation to or for the benefit of any or all of its shareholders in respect of any of its shares whether by dividend or by purchase, redemption or other acquisition of its shares or otherwise. Neither the making of, nor payment or performance upon, a guaranty or similar arrangement by a corporation for the benefit of any or all of its shareholders nor a direct or indirect transfer effected under Chapter 19 (relating to fundamental changes) with the approval of the shareholders shall constitute a distribution for the purposes of this subpart.

The Pennsylvania law also fixes the date such a distribution is made:

> Date of distribution.–The effect of a distribution shall be measured:

---

[6]The Pennsylvania Business Corporation Law was based upon the Model Business Corporation Act.  See 15 Pa. C.S.A. § 1551, Amended Committee Comment 1990.

15

> (1) as of the date specified by the board of
> directors when it authorizes the distribution if
> the distribution occurs within 125 days of the
> earlier of the date so specified or the date of
> authorization; or
>
> (2) as of the date of distribution in all other
> cases.
>
> In the case of a purchase, redemption or other acquisition of
> its own shares by a corporation, the distribution shall be
> deemed to occur as of the date money or other property is
> transferred or debt is incurred by the corporation or as of the
> date the shareholder ceases to be a shareholder of the
> corporation with respect to the shares, whichever is earlier.

15 Pa. C.S.A. § 1551(d).

Pennsylvania law establishes a cause of action in favor of the corporation

and against a director who authorized a prohibited distribution, with such director liability

fixed by the amount of the improper distribution that was made:

> Except as otherwise provided pursuant to section 1713
> (relating to personal liability of directors), a director who
> votes for or assents to any dividend or other distribution
> contrary to the provisions of this subpart or contrary to any
> restrictions contained in the bylaws shall, if he has not
> complied with the standard provided in or pursuant to section
> 1712 (relating to standard of care and justifiable reliance), be
> liable to the corporation, jointly and severally with all other
> directors so voting or assenting, for the amount of the
> dividend that is paid or the value of the other distribution in
> excess of the amount of the dividend or other distribution that
> could have been made without a violation of the provisions of
> this subpart or the restrictions in the bylaws.

15 Pa. C.S.A. § 1553(a) (emphasis added).  It also mandates a two-year limitations period

for a corporation asserting liability against a director owing to an improper distribution.

15 Pa. C.S.A. § 1553(d).  See In re National Forge Co., 344 B.R. 340, 373 (W.D. Pa. 2006).[7]

   First Federal raises a number of challenges to the trustee's assertion that it could be liable to Tri-State under Pennsylvania's Business Corporation Law by obtaining a corporate surety and guarantee agreement of a shareholder loan in March 2004, and then receiving payments under that March 2004 agreement.  For example, there is no contention that First Federal was ever a director of Tri-State, and section 1553 liability is limited to directors.  See In re National Forge Co., 344 B.R. at 372.[8]  The trustee's contention that the surety and guarantee agreement meets the definition of a "distribution" is also debatable.  I need not decide those issues, or others raised by the defendant as to Count I, because it is clear from the complaint that any claim under section 1551 would be barred by the two-year limitation period found in section 1553(d).  See In re National Forge Co., 344 B.R. at 372.

   The "distribution" of which the trustee complains occurred in March 2004, which is the date Tri-State incurred its surety and guarantee obligation to First Federal.

---

[7]A director's breach of fiduciary duty, established by 15 Pa. C.S.A. § 1712, has a similar two-year limitations period.  See, e.g., In re National Forge Co., 344 B.R. at 373 (citing Maillie v. Greater Delaware Valley Health Care, Inc., 156 Pa. Cmwlth. 582 (1993)).

[8]Section 1553(c) of Pennsylvania's Business Corporation Law allows a director who is held liable for an unlawful distribution to seek contribution from shareholders who received the distribution, if the shareholder knew that the distribution was improper.  The trustee argues that First Federal held a security interest in its stock and therefore should be treated as though it were a shareholder.  Even so, Tri-State would have no claim under section 1553 against its shareholders; only its directors could hold such a claim.

Complaint, ex. B; see 15 Pa. C.S.A. § 1551(d).[9]  Obviously, Tri-State was aware of this

obligation, as the trustee asserts that the corporation tendered surety payments to First

Federal for seven years. Therefore, the trustee's claim for an unlawful distribution under

section 1551 of the Pennsylvania Business Corporation Law falls well outside

Pennsylvania's two-year limitations period established by section 1553(d).


                                             B.


        To avoid the application of the two-year limitations period, the trustee does

not contend that state law doctrines of equitable tolling or the discovery rule apply.  See

generally Fine v. Checcio, 582 Pa. 253 (2005).  Instead, she argues that distributions that

violate section 1551 are "void ab initio," and, therefore, that any statute of limitations is

inapplicable.  Trustee's Memorandum of Law, at 14-15.[10]  The trustee's only cited

---

[9]I appreciate that In re Trimble, 339 F.2d 838 (3d Cir. 1964), held that when a
corporation agrees to finance a stock redemption with future payments, its right to tender such
payments under Pennsylvania's then-Business Corporation Law would be determined at the time
each payment is due.  Id., 339 F.2d at 842-44.  However, when Pennsylvania amended its
Business Corporation Law by adding section 1551(d), this provision was "intended to overrule In
re Trimble . . . ."  15 Pa. C.S.A. § 1551, Committee Comment–1988.

[10]The trustee does not contend that an unlawful distribution is "voidable."  She
writes:

        Defendant's argument ignores the distinction under Pennsylvania
        law between "voidable" agreements and agreements "void ab
        initio."  Voidable agreements are voidable only within the
        applicable statute of limitations period.  In contrast, agreements
        void ab initio are void at the outset, and the absence of a court
        filing within the statute of limitations period does not change the
        void character of the agreement.

                                                            (continued...)

18

authority for her state law proposition is Pinebrook Minerals, LLC v. Anadarko E & P Co., LP, 2011 WL 3584783 (M.D. Pa. July 25, 2011), report and rec. adopted, 2011 WL 3584784 (M.D. Pa. Aug. 15, 2011), wherein the plaintiff argued that an oil and gas lease was entered into without authority and thus was unenforceable, despite the passage of Pennsylvania's four-year limitations period.  The court in Pinebrook dismissed plaintiff's complaint, concluding that the plaintiff failed to allege sufficient facts to demonstrate any lack of authority for the entry into the lease.  Therefore, it never addressed the legal principle whether a state law statute of limitations is inapplicable when a contract is void.

I shall assume arguendo that Pennsylvania law would allow a challenge to a void agreement without regard to its statute of limitations.  However, the trustee cites no decision holding that corporate actions not permitted by its Business Corporation Law are void.  There are reported decisions to the contrary.  See, e.g., First Union Nat'l Bank v. Quality Carriers, Inc., 2000 WL 33199269, at *6 (C.P. Phila. Co. Oct. 10, 2000) ("Although no Pennsylvania cases address this precise issue [whether a corporate merger that fails to comply with all statutory requirements is void rather than voidable], the courts of this Commonwealth have refused to regard corporate decisions that fail to comply with the [Business Corporation Law] as void.") (citing Fishkin v. Hi-Acres, Inc., 462 Pa. 309, 315-17 (1975) (corporate asset sale not in compliance with Pennsylvania's then Business Corporation Law was voidable and not void) and Soloski v. Hetrick, 396 Pa. Super. 140 (1990) (declining to find an issuance of stock that violated the Business Corporation Law void ab initio)).  Other jurisdictions reach a similar result.  See also

---

[10](...continued)
Trustee's Memorandum, at 14.

19

Contemporary Indus. Corp., 564 F.3d 981, 988 (8th Cir. 2009) (noting that "Oregon

follows the minority rule that unlawful distributions are void, and not merely voidable.");

In re MacMenamin's Grill, Ltd., 450 B.R. 414, 426-27 (Bankr. S.D.N.Y. 2011) (finding

payment agreement that violated New York's Business Corporation Law voidable, not

void ab initio).

Furthermore, First Federal loaned $2.5 million to Mrs. and Mr. Long in

2004—seven years before Tri-State filed its bankruptcy petition.  The corporation's

surety/guarantee agreement required Tri-State to warrant to the lender that its obligation

would not render it insolvent, nor prevent it from paying its future debts when due.

Thereafter, for seven years the corporation apparently operated, presumably paying its

creditors for years after incurring its liability to the defendant, and tendering payments to

the defendant.  The trustee has not alleged any harm to the public interest that this

transaction, if improper, may have caused.  See Fishkin v. Hi-Acres, 462 Pa. at 316-17

("Although rescission may in some instances be an appropriate remedy, it is not . . . when

the rights of third parties have intervened and the transaction has been completed.").

Moreover, it is counterintuitive to suggest that Pennsylvania would

establish a cause of action for violation of section 1551 of its Business Corporation Law

under section 1553, declare that the violation establishes a liability to the corporation that

is placed solely upon those corporate directors who authorized the unlawful distribution,

limit such liability to the amount of the unlawful distribution, require that any assertion of

liability to the corporation be made against those directors within two years, and yet,

without so stating in the statute, permit the corporation to recover the amount of the

20

unlawful distribution from a non-director, such as First Federal, seven years later (or

possibly longer, if there is no limitations period).

Accordingly, I conclude that First Federal's affirmative defense—that any

claim made by the trustee against it of an unlawful distribution under 15 Pa. C.S.A. §§

1551, 1553 is time-barred—is clearly demonstrated by the complaint itself,  Therefore,

Count I should be dismissed under Rule 12(b)(6).


IV.


As the trustee conceded at oral argument, the dismissal of Count I renders

its fraudulent conveyance claims raised in Count II, based upon 11 U.S.C. § 548, and

Count III, based upon 12 Pa. C.S.A. §§ 5101, et seq. (Pennsylvania's Uniform Fraudulent

Transfer Act), problematic.[11]

Section 548(a)(1) of the Bankruptcy Code limits avoidance of fraudulent

transfers to those transfers occurring within two years of the filing of the bankruptcy

petition.  See, e.g., In re Smith, 614 F.3d 654 (7th Cir. 2010).  Pennsylvania's Uniform

Fraudulent Transfer Act has a four year reachback period for constructively fraudulent

transfers.  12 Pa. C.S.A. § 5109; see, e.g., State Farm Mut. Auto. Ins. Co. v. Cordua, 834

---

[11]Although not cited by the trustee, by virtue of 11 U.S.C. § 544(b) a chapter 7 trustee may assert the state law rights of a creditor to set aside a conveyance that is fraudulent. See, e.g., In re Walter, 261 B.R. 139, 141-42 (Bankr. W.D. Pa. 2001); In re Allegheny Health, Education and Research Foundation, 253 B.R. 157, 164 (Bankr. W.D. Pa. 2000) ("11 U.S.C. § 544(b)(1) allows the Trustee to pursue his action under 12 Pa. C.S.A. §§ 5104(a)(2) and 5105 against PHCT for the avoidance of the conveyances alleged by the Trustee to have been made provided that a creditor of Centennial exists, or creditors of Centennial exist, as of Centennial's petition filing date who then possessed identical causes of action against PHCT . . . ."); In re Nam, 257 B.R. 749, 760 (Bankr. E.D. Pa. 2000).

F. Supp.2d 301, 305 (E.D. Pa. 2011).[12]  Therefore, in this proceeding, the trustee is

limited to seeking avoidance only of those constructively fraudulent transfers made within

four years of April 13, 2011.  The March 30, 2004 transaction by which Tri-State became

obligated to First Federal can not be challenged by the trustee as a fraudulent transfer.

Furthermore, in order to avoid a transfer as constructively fraudulent, Tri-

State must not have "received reasonably equivalent value in exchange for such transfer

or obligation."  11 U.S.C. § 548(a)(1)(B); see also 12 Pa. C.S.A. § 5104(a)(2).  Value is

received when an antecedent debt is paid.  11 U.S.C. § 548(d)(2); 12 Pa. C.S.A. §

5103(b).  When a transfer is made that reduces the amount of an antecedent debt by the

amount of the payment made, then the transferor has received reasonably equivalent value

in exchange for the transfer, and that transfer is not constructively fraudulent.  See, e.g.,

Rubin v. Manufacturers Hanover Trust Co., 661 F.2d 979 (2d Cir. 1981); In re Brooke

Corp., 469 B.R. 68, 71 (D. Kan. 2012) ("The Trustee concedes that . . . if Brooke had an

obligation under the guarantee, the corresponding payments to defendant 'may not be

constructively fraudulent because the satisfaction of antecedent debt would constitute

reasonable equivalent value.'").

Accordingly, because the trustee failed in Count I to state a cause of action

that would invalidate Tri-States' 2004 surety and guarantee agreement with First Federal,

and asthat agreement falls outside the reachback periods of Counts II and III, it is clear

---

[12]In addition to the four year reachback period, when the transfer is made with an
actual intent to defraud, section 5109(1) allows an avoidance action to be brought "within
one year after the transfer or obligation was or could reasonably have been discovered by the
claimant."  Here, the trustee does not assert that there was an actual intent to defraud; moreover,
Tri-State knew of all transfers when they occurred.  Therefore, the four-year limitations period
set by section 5109(2) is applicable to this adversary proceeding.

from the trustee's averments that all payments made by Tri-State after March 30, 2004

were made in partial satisfaction of its valid antecedent debt.  Therefore, the complaint

makes clear that none of those prepetition payments were constructively fraudulent, <u>see</u>

<u>Intercontinental Metals Corp. v. Erlanger & Co.</u>, 1990 WL 64805, 902 F.2d 1565 (4th

Cir. 1990) (table), and Counts II and III must also be dismissed.


                                          V.


          In Count IV, the trustee contends that all payments received by First Federal

within 90 days of Tri-States' bankruptcy filing on April 13, 2011 constitute avoidable

preferential transfers.  Section 547(b) of the Bankruptcy Code establishes the five

elements that constitute a preferential transfer:

> (b) Except as provided in subsection (c) of this section, the
> trustee may avoid any transfer of an interest of the debtor in
> property–
>
> > (1) to or for the benefit of a creditor;
> > (2) for or on account of an antecedent debt
> > owed by the debtor before such transfer was
> > made;
> > (3) made while the debtor was insolvent;
> > (4) made–
> > > (A) on or within 90 days before the
> > > date of the filing of the petition; or
> > > (B) between ninety days and one
> > > year before the date of the filing of
> > > the petition, if such creditor at the
> > > time of such transfer was an insider;
> > > and
> > (5) that enables such creditor to receive more
> > than such creditor would receive if–
> > > (A) the case were a case under
> > > chapter 7 of this title;

                                          23

(B) the transfer had not been made;
and
(C) such creditor received payment
of such debt to the extent provided
by the provision of this title.

If the trustee's allegation that all of Tri-States' assets served as collateral for

its surety and guarantee agreement with First Federal, Amended Complaint, ¶¶ 15-16,

then the trustee would fail to state a claim under section 547.  When a defendant is fully

secured, any transfer toward repayment of an antecedent debt is not preferential, owing to

the requirement found in section 547(b)(5).  "[T]here cannot be preferential payment of a

fully secured claim.  If there is sufficient collateral to fully secure the creditor's

claim—that is, if the collateral would have been liquidated in a Chapter 7 case for at least

the amount that the creditor is owed—then the claim would have been paid in full in the

Chapter 7 case, and so the creditor would have been in the same situation as the one

produced by the prepetition payment."  In re Telesphere Communications, Inc., 229 B.R.

173, 177 (Bankr. N.D. Ill. 1999); see, e.g., In re Castletons, Inc., 990 F.2d 551, 554 (10th

Cir. 1993); In re Schwinn Bicycle Co., 200 B.R. 980, 987-88 (Bankr. N.D. Ill. 1996).

That is, payments to a creditor with a security interest in all of the debtor's assets cannot

enable that secured creditor to receive more than it would receive in a chapter 7 case

because, upon liquidation of its collateral by the trustee, it would receive the proceeds

until its claim was fully repaid.  11 U.S.C. § 725; see, e.g., In re Smith's Home

Furnishings, Inc., 265 F.3d 959, 964 (9th Cir. 2001); 5 Collier on Bankruptcy, ¶ 547.03[7]

at 547-43 (16th ed. 2012).

        As noted earlier, however, the trustee has recently submitted a

memorandum disputing her allegation that First Federal held a security interest in all of

the debtor's assets.  If so, then it is possible that the defendant did receive one or more

preferential transfers within the meaning of section 547(b).

> The trustee asserts that First Federal was a creditor, holding an antecedent

debt.  She raises the issue of corporate insolvency and avers that the defendant received

payments within 90 days of Tri-State's bankruptcy filing.  If First Federal held only an

unsecured claim before April 13, 2011, then certain prepetition transfers could be

preferential.  When a chapter 7 debtor is insolvent—that is, liabilities exceed assets, 11

U.S.C. § 101(32)(A), a balance sheet test, see 5 Collier on Bankruptcy, ¶ 547.03[5] at

547-36 (16th ed. 2012) —a transfer to an unsecured creditor within the preference reach-

back period always results in that creditor receiving more than it would receive in a

chapter 7 liquidation for purposes of section 547(b)(5).  See, e.g., In re Mayer, 1999 WL

777758, at *3 (E.D. La. Sept. 29, 1999); In re Lease-A-Fleet, Inc., 141 B.R. 853, 861

(Bankr. E.D. Pa. 1992); 5 Collier on Bankruptcy, ¶ 547.03[7] at 547-42 (16th ed. 2012).

Section 547(f) establishes a rebuttable presumption of insolvency on the part of chapter 7

debtors.  See, e.g., In re Luster-Coate Metallizing Corp., 2004 WL 432038, at *4 (Bankr.

W.D.N.Y. 2004).

> I appreciate the defendant's argument that the trustee has failed to specify

the dates and amounts of the allegedly preferential transfers made within the 90-day

reachback period ending April 13, 2011.  Unlike Counts I, II, and III, that pleading defect

in Count IV can be corrected by amendment. Moreover, the trustee is prepared to amend

her averment regarding the defendant's secured status.

> Therefore, the trustee will be granted leave to amend her present complaint,

if warranted, to assert that First Federal was an unsecured creditor at the time of Tri-

States' bankruptcy filing, and to specify the dates and amounts of allegedly preferential

transfers received by the defendant.

VI.

Finally, Section 550(a) provides in pertinent part that:

> [e]xcept as otherwise provided in this section, to the extent
> that a transfer is avoided under section 544, 545, 547, 548, . . .
> the trustee may recover, for the benefit of the estate, the
> property transferred, or, if the court so orders, the value of
> such property, from—
>
>> (1) the initial transferee of such transfer or the
>> entity for whose benefit such transfer was made;
>> or
>> (2) any immediate or mediate transferee of such
>> initial transferee.

Therefore, "[s]ection 550(a) of the Bankruptcy Code permits a trustee . . .

after avoidance of a transfer under the trustee's avoiding powers, to recover the property

transferred or the value of the property transferred." 5 Collier on Bankruptcy, ¶ 550.01,

at 550-3 (16th ed. 2012). In this adversary proceeding, the dismissal of Counts II and III

relegate the trustee's possible recovery under section 550(a) to her preference claim under

Count IV. See In re Calvillo, 263 B.R. 214, 218 n.13 (W.D. Tex. 2000); In re Allou

Distributors, Inc., 379 B.R. 5, 19 (Bankr. E.D.N.Y. 2007); In re Connolly North America,

LLC, 340 B.R. 829, 837 (Bankr. E.D. Mich. 2006).

As the trustee will be granted leave to amend her complaint to state a claim

under section 547(b), she will also need to amend her claim under section 550(a) to be

limited to her possible preferential recovery.

26

An appropriate order will be entered.

_____
BRUCE FOX
United States Bankruptcy Judge

Dated: October 15, 2012